UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

Plaintiff,

vs.

DECISION AND ORDER
15-CV-6583-CJS

GATES-CHILI CENTRAL SCHOOL DISTRICT,

Defendant.

---

For Plaintiff:

Paula Nancy Rubin, Esq.
Megan Elizabeth Schuller, Esq.
U.S. Department of Justice
1425 New York Avenue, NW
Washington, DC 20005
(202) 305-2191

Kathryn L. Smith, A.U.S.A.
United States Attorney's Office
100 State Street
Rochester, NY 14614
(585) 263-6760

For Defendant:

David W. Oakes, Esq.
Daniel J. Moore, Esq.
Harris Beach LLP
99 Garnsey Road
Pittsford, NY 14534
(585) 419-8727

## INTRODUCTION

**Siragusa, J.** This Americans with Disabilities Act case is before the Court on a motion for summary judgment filed on December 21, 2015, ECF No. 10, by Defendant,

the Gates-Chili Central School District ("District"). For the reasons stated below, the District's application is denied.

## FACTUAL BACKGROUND

Defendants complied with L.R. Civ. P. 56 and filed a statement of material facts, Dec. 21, 2015, ECF No. 10-1. Plaintiff responded with a "Local Rule 56 Opposing Statement of Facts by Plaintiff the United States of America," Feb. 2, 2016, ECF No. 15-1 ("Pl.'s Counter-Statement"). From those statements, the Court gleans the following material facts important to disposition of this motion. At issue is whether the District's rule that the student, identified only as D.P. ("D.P." or the "Student"), who is accompanied by a service dog, Hannah, must also bring to school, as well as on the school bus, an adult dog handler.

The District is a public entity within the meaning of the Americans with Disabilities Act ("ADA") and the ADA regulations. Compl. ¶ 7; Amended Answer ¶ 7; J.S. Aff. ¶ 6, Dec. 21, 2015, ECF No. 10-2. D.P., whose dog is at issue in this litigation, is a qualified individual with a disability within the meaning of the ADA and the ADA regulations. Compl. ¶¶ 9 & 10; Amended Answer ¶ 10; J.S. Aff. ¶ 7. 3. D.P. is enrolled in the District as a student in one of its schools. Compl. ¶ 10; Amended Answer ¶ 10; J.S. Aff. ¶ 8. The District also provides bus transportation to and from school for D.P. J.S. Aff. ¶ 9. D.P. is accompanied at school by her service dog and a dog handler, provided by D.P.'s mother, H.P. ("H.P." or the "Parent"). In addition to the separate adult handler, D.P. is also accompanied throughout the school day by a full-time 1:1 aide and a full-time 1:1 nurse, both provided by the District. Compl. ¶ 26; Am. Answer ¶ 26; H.P. Aff. ¶ 14.

The District alleges that D.P. needs assistance for the "handling, control, direction, redirection, and care and supervision of the dog. Compl. ¶ 23; Amended Answer ¶

23; J.S. Aff. ¶ 11." Def.'s Statement of Facts ¶ 7, Dec. 21, 2015, ECF No. 10-1. Plaintiff disputes this allegation, claiming the following:

> (a) Handling: Disputed. Though she is nonverbal, D.P. is able to give her service dog commands using a series of hand gestures or signals. She jiggles or pulls up on the handle of the service dog's harness to indicate "let's go," puts her hand out in front of her service dog to indicate "wait" or "settle," pats her service dog's posterior area to get her to sit, and pushes on her head or pats the ground to direct the service dog to lay down. In addition, D.P. can tether herself to her service dog. Compl. ¶¶ 20 & 22; Horozko[1] Aff. ¶¶ 7-8; H.P. Aff. ¶ 17.
>
> (b) Control: Disputed. Upon information and belief, the service dog has never been out of control in school or on the school bus in the five years it has accompanied D.P. to school. Horozko Aff. ¶ 8.
>
> (c) Direction/Redirection: Disputed. These terms do not appear in the Title II regulation and are vague. To the extent Defendant's use of these terms is a proxy for "handling," the United States reiterates its response as stated in Paragraph 7(a) above regarding D.P.'s ability to handle her service dog. Compl. ¶¶ 20 & 22; Horozko Aff. ¶¶ 7-8; H.P. Aff. ¶ 17.
>
> (d) Care and Supervision: Disputed. "Care and supervision" as used in the Title II regulation is a legal term, which is further defined in the regulatory guidance and Department of Justice technical assistance documents. See 28 C.F.R. § 35.136(e); 28 C.F.R. pt. 35, app. A § 35.136 at 608 (July 1, 2014); U.S. Dep't of Justice, U.S. Department of Justice: Frequently Asked Questions About Service Animals and the ADA, Question 9 (July 2015) (attached hereto as Exhibit A). As defined therein, care and supervision includes walking, toileting, feeding, grooming, and veterinary care. The facts demonstrate that the service dog in this case does not need care or supervision because the service dog does not require exercise, food, toileting, recreation, exercise, or grooming during the school day. Horozko Aff. ¶ 8; Denyer Aff. ¶ 14; Pl.'s Ex. H.

Pl.'s Counter-Statement ¶ 7. Plaintiff also disputes the District's claim that "[t]he handler supplied by D.P.'s Parent tethers and untethers the dog and issues commands to the dog, and assists and/or directs the Student when the Student tethers herself to the dog. Compl. ¶ 24; Amended Answer ¶ 24; J.S. Aff. ¶ 12." Def.'s Statement of Facts ¶ 8.

[1] Evidently a reference to Jennifer Horozko, who assists D.P. by handling her service dog, Hannah, while D.P. is in school. Horozko Aff. ¶ 1, Feb. 2, 2016, ECF No. 15-2.

Plaintiff contends that the dog handler has, over time, given the service dog fewer and fewer commands, and that D.P. can now tether herself to the dog, and only needs assistance untethering. Further, Plaintiff states that D.P., by using hand gestures, can give commands to the dog, and that the dog apparently understands D.P.'s teacher when that individual tells the class it is time to go to lunch or the gym. Pl.'s Counter-Statement ¶ 8.

Plaintiff asserts that Hannah is a "Service Dog" ("Service Animal") within the meaning of the ADA Service Animal Regulations. J.S. Aff. ¶ 13; *see also* Compl. ¶ 11; Amended Answer ¶ 11; 28 C.F.R. § 35.104 at fourth par. from the end. Plaintiff agrees with this assertion. Pl.'s Counter-Statement ¶ 9. D.P.'s Parent has requested the District allow the dog to accompany the Student without the Parent providing a dog handler. Compl. ¶ 28; Amended Answer ¶ 28; J.S. Aff. ¶ 14. As Plaintiff explains :

> H.P. has repeatedly asked the District to allow D.P.'s 1:1 aide or other school staff to help D.P. handle her service dog (as District staff successfully did for over a year and a half in preschool). For example, by a letter from her attorney, dated December 19, 2012, H.P. requested that the District allow D.P. to attend school without H.P. providing a separate adult handler. The letter also asked the District to provide assistance with using the service dog to anticipate and interrupt seizure activity in accordance with D.P.'s seizure protocol, tethering and untethering the service dog to D.P., and escorting D.P. throughout the school grounds accompanied by her service dog. Finally, H.P. asked that the District help D.P. with issuing and reinforcing appropriate commands in order to use the service dog as a way to enhance D.P.'s communication, transition skills, social interaction, autonomy, and physical safety. The District refused to honor this request. Another time, when Horozko was ill and anticipated missing a week or two of work, H.P. asked if D.P. and her service dog could attend school without a separate adult on a very temporary basis. The District again refused. As a result of the District's policy, D.P. missed six full days and five half days of school. Compl. ¶ 28; H.P. Aff. ¶¶ 11-12; Pl.'s Exs. E, F & G.

Pl.'s Counter-Statement ¶ 10. Since September of 2012 when D.P. started in kindergarten, to the present, the District has refused, and continues to refuse, to allow her service

dog to accompany her at school, or at school-related activities, unless the Parent provides an adult dog handler. Compl. ¶ 29; Amended Answer ¶ 29; J.S. Aff. ¶ 15. However, Plaintiff adds that from January 2011 until September 2012, the District permitted D.P.'s service dog to accompany D.P. to preschool without an adult dog handler, and when D.P. needed assistance handling her service dog, that assistance was provided by the District's staff members. H.P. Aff. ¶¶ 5, 9, 13–15; Horozko Aff. ¶¶ 4–5. Similarly, although the District also requires that D.P. have an adult dog handler on the bus with her, Compl. ¶ 30, Amended Answer ¶ 30, J.S. Aff. ¶ 15, from January 2011 until September 2012, D.P. was permitted to bring her service dog on the bus without an adult dog handler.

Since September 2012, the Parent has supplied an adult dog handler for D.P.'s service dog because of the District's requirement for the Parent to do so. The District has never required D.P. to bring the dog to school in order to attend school, and the District has never refused admission to D.P. to school, or a school-related activity, or the school bus, when she was accompanied by her service dog. However, the District has required that she bring a separate adult dog handler with her if her service dog is going to accompany her. J.S. Aff. ¶ 18; Compl. ¶¶ 29–30.

Plaintiff presents additional assertions of fact as follows:

1.   D.P. has walking or balance disorders. Compl. ¶¶ 8, 9, 15; H.P. Aff. ¶ 2; Horozko Aff. ¶ 4; Denyer Aff. ¶ 7.

2.   D.P., as a manifestation of her autism, cannot perceive danger and elopes or wanders. Compl. ¶ 8; H.P. Aff. ¶ 2; Horozko Aff. ¶ 4; Denyer Aff. ¶ 7.

3.  D.P.'s stimming[2] is a manifestation of her autism. Compl. ¶ 8; H.P. Aff. ¶ 7; Denyer Aff. ¶ 7.

4.  The dog that accompanies D.P. to school is a service animal or service dog within the meaning of Title II of the ADA. Compl. ¶¶ 11–15; Denyer Aff. ¶¶ 4–5, 7; Pl.'s Exs. A & H.

5.  The service dog is trained to perform tasks directly related to D.P.'s disabilities. Compl. ¶ 11; Denyer Aff. ¶ 7; H.P. Aff. ¶¶ 5-6; Horozko Aff. ¶ 4; Pl.'s Ex. H.

6.  The service dog can detect oncoming seizures and alert others that D.P. is going to have a seizure. Compl. ¶¶ 12 & 27; Denyer Aff. ¶ 7; H.P. Aff. ¶ 5; Horozko Aff. ¶ 6; Pl.'s Ex. H.

7.  The service dog has alerted school staff. that D.P. was going to have a seizure or seizure activity. Compl. ¶ 12; H.P. Aff. ¶ 5; Horozko Aff. ¶ 6.

8.  The service dog is trained to prevent D.P. from eloping[3]. Compl. ¶ 13; Denyer Aff. ¶ 7; H.P. Aff. ¶¶ 5-6; Horozko Aff. ¶ 4; Pl.'s Ex. H.

9.  The service dog is trained to apply deep pressure to D.P. to prevent or disrupt meltdowns or stimming. Compl. ¶ 13; Denyer Aff. ¶ 7.

10. The service dog provides mobility support for D.P. Compl. ¶ 14; Denyer Aff. ¶ 7; H.P. Aff. ¶ 5; Horozko Aff. ¶ 4.

11. The service dog provides core body support for D.P. Compl. ¶ 15; Denyer Aff. ¶ 7; H.P. Aff. ¶¶ 5-6; Horozko Aff. ¶ 4.

12. The service dog does not need to be walked or fed or relieve itself during the school day. Compl. ¶ 16; Horozko Aff. ¶ 8; Denyer Aff. ¶ 14.

13. From January 2011 to September 2012, District staff successfully assisted D.P. with handling her service dog at school. Compl. ¶ 17; H.P. Aff. ¶¶ 5-7, 14-15; Denyer Aff. ¶¶ 9-10; Pl.'s Ex. B.

---

[2] "Stimming (abbreviated from the word stimulating) is where we undertake some kind of repetitive physical activity aimed at focusing our attention away from a stressor and therefore bringing that stress under control. Examples of stimming would include rapid finger tapping, rapid toe or foot tapping, rocking, humming, finger or hand flapping or bouncing in one's seat." Rosalind Bergemann, An Asperger Leader's Guide to Living and Leading Change 46 (Jessica Kingsley Publishers 2014); *see also* H.P. Aff. ¶ 7 ("stimming (repetitive body movements).").

[3] "Similar to wandering behaviors in the Alzheimer's community, wandering and elopement behaviors in children and adults with autism have led to countless tragedies across the country." AWAARE Collaboration, Autism & Wandering, http://awaare.nationalautismassociation.org/autism-wandering/ (last visited April 6, 2016).

> 14. D.P. was subject to the policies, practices, and procedures of the District during preschool. Compl. ¶ 18; H.P. Aff. ¶ 4; Pl.'s Ex. B.
>
> 15. D.P. was subject to the District's policies, practices, and procedures during kindergarten. Compl. ¶ 18; H.P. Aff. ¶ 4.
>
> 16. D.P. can and does give commands to her service dog using hand gestures or signals. Compl. ¶ 20; H.P. Aff. ¶ 17; Horozko Aff. ¶ 8; Denyer Aff. ¶ 13.
>
> 17. The service dog responds to certain instructions or commands that the teacher gives to the class. Compl. ¶ 21; Horozko Aff. ¶ 7; Denyer Aff. ¶ 9.
>
> 18. D.P. tethers herself to her service dog. Compl. ¶ 22; Horozko Aff. ¶ 7.
>
> 19. The assistance D.P. may need at times during the school day in handling her service dog is untethering, issuing a few commands, and prompting D.P. to tether herself and issue commands at appropriate times. Compl. ¶ 24; Horozko Aff. ¶¶ 6-8.
>
> 20. Because of the District's policies, practices, and procedures, H.P. has spent more than $25,000 to provide a separate, adult handler for the service dog during the school day as required by the District. Compl. ¶¶ 31 & 39; H.P. Aff. ¶ 18.
>
> 21. Both H.P. and D.P. have suffered harm due to the District's refusal to assist D.P. in handling her service dog at school and requirement that H.P. provide a separate adult to accompany D.P. and her service dog to school. Compl. ¶¶ 38-39; H.P. Aff. ¶¶ 18-20.

Pl.'s Counter-Statement ¶¶ 1–21.

In its Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment 1 n.1, Feb. 22, 2016, ECF No. 20, the District maintains that Plaintiff "has submitted information that a handler is being provided for the Student by Medicaid. Document 15-4 at pars. 19–20. This case is moot." However, the document referenced above is an affidavit from D.P.'s mother, in which she states:

> It was not until July 2015 that CDPAP increased D.P.'s hours so that I now have enough Medicaid hours to cover the cost of assistance with D.P. at

> home and the cost of Horozko's assistance at school. This help, however, is not guaranteed. My daughter's CDPAP hours are recertified every six months. Her hours can be reduced, and I am afraid that they will do just that. I anticipate learning the results of the next recertification in February 2016.

H.P. Aff. ¶ 20. Based upon this assertion, the Court finds the District's mootness argument unavailing.

**STANDARD OF LAW**

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew,* 75 F.3d 98, 107 (2d Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert. denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249.

"[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(c)(1)(B). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

**ANALYSIS**

Plaintiff's complaint contains one cause of action alleging a violation of D.P.'s rights under the ADA. Specifically, Plaintiff alleges that the District is violating Title II of the ADA, 42 U.S.C. §§ 1231–1234, and the implementing regulation codified at 28 C.F.R. Part 35, Subpart F, Compl. ¶ 32, by requiring D.P. to bring an adult dog handler to school and on the school bus. The District, however, contends that the "regulations make it clear that a public entity, such as the District, is not required to provide any services with respect to a service animal brought onto the premises of a public entity by an individual." Def.'s Mem. of Law 4, Dec. 21, 2015, ECF No. 10-5. The District's argument is summed up as follows:

> The USDOJ Service Animals Regulations at 28 C.F.R. Section 35.136 entitle the District to judgment as a matter of law. In addition, the ADA Personal Devices And Services Regulation at 28 C.F.R. Section 35.135 requires this result as well. USDOJ's assertion that the more general regulation at 28 C.F.R. Section 35.130(b)(7) somehow negates the existence of the Service Animals Regulations and the Personal Devices And Services Regulation is not only meritless but contrary to the rules governing the in-

> terpretation of the interplay between a general regulation and a specific regulation. USDOJ defined the rules concerning service animals in Regulations it promulgated. It cannot selectively decide to ignore those Regulations.

*Id*.

The District argues that the more specific service animal regulations in 28 C.F.R. § 35.136 control here and that the more general provision, on which Plaintiff relies, is trumped by this more specific provision as a matter of regulatory interpretation. The Court agrees. *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 524 (1989) ("A general statutory rule usually does not govern unless there is no more specific rule.").

In that regard, § 35.136 reads as follows: "(a) General. Generally, a public entity shall modify its policies, practices, or procedures to permit the use of a service animal by an individual with a disability." The exceptions are: "(b) Exceptions. A public entity may ask an individual with a disability to remove a service animal from the premises if—(1) The animal is out of control and the animal's handler does not take effective action to control it; or (2) The animal is not housebroken." 28 C.F.R. § 35.136(b).

Further, this regulation provides that "[a] public entity is not responsible for the care or supervision of a service animal." *Id*. § 35.136(e). The District points out that in 75 Federal Register 56,197 (September 15, 2010), the Department of Justice ("DOJ") wrote: "The Department has long held that a service animal must be under the control of the handler at all times." The District argues that the regulation contemplates that the handler will be the disabled person who is relying on the service dog. Further, the District maintains that if the individual is unable to handle the service dog, then he or she, and not the District, is responsible for providing one who can. This, according to the District, is implied in the regulation's language: that the District is required to "permit the

use of a service animal by an individual with a disability." Permit means "1. To consent to formally; to allow (something) to happen, esp. by an official ruling, decision, or law <permit the inspection to be carried out>. 2. To give opportunity for; to make (something) happen <lax security permitted the escape>. 3. To allow or admit of <if the law so permits>." PERMIT, Black's Law Dictionary (10th ed. 2014). The District points out the absurdity of requiring it to handle the dog and keep it under control, because were it to fail in that duty, the regulation permits it to ask the disabled person to remove the animal from the premises. Moreover, the District contends that subdivision (e) of the regulation clearly spells out that the District has no obligation for supervision of the animal. On this issue, the Court agrees with the District, and finds that neither the statute, nor the regulation, require the District to provide handling services for the dog.

Next, the District disputes Plaintiff's argument that by having her service dog tethered to her, D.P. has the dog under her control. The District maintains that control implies much more than simply being tied to the dog. It requires that the handler be someone "who trains or controls an animal." Handler, Merriam-Webster online dictionary http://www.merriam-webster.com/dictionary/handler (last visited April 6, 2016). The District contends that being tethered to the dog may assist in controlling it, but that tethering is not, in and of itself, control over the service dog.

The District's argument is undercut by the holding in *Alboniga v. Sch. Bd. of Broward Co. Fl.*, 87 F. Supp. 3d 1319, 1342 (S.D. Fla. 2015) ("normally, tethering a service animal to the wheelchair of a disabled person constitutes 'control' over the animal by the disabled person, acting as the animal's 'handler.' And, even absent tethering, voice controls or signals between the animal and the disabled 'handler' can constitute

'control.'"). Plaintiff concedes that D.P. cannot untether herself from her service dog and that D.P. "requires intermittent assistance with verbal commands and tethering and un-tethering." Compl. ¶ 23. The District argues that,

> To assert that one can occasionally do something with a dog but that the individual is not actually in charge of the dog is simply an admission that the individual is not a handler and is not providing handling. Even assuming *arguendo* that the young child can occasionally do something with the dog, the District is not obligated to provide the balance of managing, controlling, directing, and redirecting and care and supervision of the dog.

Def.'s Mem. of Law 9.

Plaintiff argues in response that D.P.'s current service dog needs only minimal handling assistance: "as an eight-year-old child with multiple disabilities, D.P. still needs the assistance of adults with certain activities, including the tasks related to her service dog." Pl.'s Mem. of Law 1, Feb. 2, 2016, ECF No. 15. Plaintiff goes on to explain the amount of assistance D.P. requires in handling her service dog:

> She needs help from time to time with untethering (unhooking) herself from her service dog when appropriate, such as for gym class. She may occasionally need to be reminded to issue a command to her service dog, which she does using hand signals, and she sometimes needs assistance verbalizing certain commands, such as when she is having a seizure.

*Id*. 1–2. During oral argument, the District conceded it had no issue with assisting D.P. to untether herself from Hannah.

The Court finds that summary judgment is precluded, since a material issue of fact exists as to whether D.P. can or cannot "handle" her service dog. If Hannah is tethered to D.P. and the only assistance she needs is to untether her from the dog, then under the logic employed by the Florida District Court and the District's concession mentioned above, D.P. can be considered to be in control of Hannah. On the other hand, if D.P. requires school district personnel to actually issue commands to Hannah,

as opposed to occasionally reminding her to do so, then D.P. cannot be considered in control of her service dog.

## CONCLUSION

Accordingly, Defendant's motion for summary judgment, ECF No. 10, is denied.

IT IS SO ORDERED.

Dated: July 28, 2016
       Rochester, New York

                              ENTER.      /s/ Charles J. Siragusa
                                                  CHARLES J. SIRAGUSA
                                                  United States District Judge